1

2

3

4

5

6

7

8                    **IN THE UNITED STATES DISTRICT COURT**

9              **FOR THE EASTERN DISTRICT OF CALIFORNIA**

10

11    JEFFREY SHAWN HENDERSON,              No. CIV S-04-1341-GEB-CMK-P

12                 Petitioner,

13          vs.                            AMENDED FINDINGS AND
                                           RECOMMENDATIONS
14    MIKE KNOWLES, Warden,

15                 Respondent.

16    _____/

17          Petitioner, a state prisoner proceeding pro se, brings this petition for a writ of

18    habeas corpus pursuant to 28 U.S.C. § 2254.  Pending before the court is petitioner's petition for

19    a writ of habeas corpus (Doc. 1), filed on July 13, 2004, respondent's answer (Doc. 8), filed on

20    January 4, 2005, and petitioner's reply (Doc. 15), filed on February 24, 2005.  On September 7,

21    2005, petitioner filed a notice of new case law making the court aware of the Supreme Court's

22    decision in Crawford v. Washington, 541 U.S. 36 (2004), and the Ninth Circuit's decision in

23    Bockting v. Bayer, 399 F.3d 1010, as amended on denial of rehearing by 408 F.3d 1127 (9th Cir.

24    2005).  Respondent has not responded to this filing.

25    / / /

26    / / /

1

# I. BACKGROUND

**A.**     _**Facts**_[1]

The state court recited the following facts, and petitioner has not offered any clear and convincing evidence to rebut the presumption that these facts are correct:

> _Prosecution Case-in-Chief_
> On August 13, 2000, at about 2:30 a.m., Sacramento Sheriff's Deputy Tyler Neff was dispatched to Raley's market on Folsom Boulevard. He contacted Shonda Baker who was crying and appeared to be in what he termed a "panic mode." Her eye was swollen halfway shut, and she had swelling on her cheek and had an abrasion on her hand.
>
> Baker told Neff that, at about 2:00 a.m., two men approached her and took her purse. She then followed the men to the First Value Inn (Inn), located a short distance away.
>
> Neff drove Baker to the Inn and took a more detailed statement. Baker said that two Black men approached her while she was waiting for a taxi. The man who stole her purse, later identified as defendant, punched her three times in the face. Baker told Neff that defendant's companion looked shocked or surprised when defendant struck her and ran off with her purse. Baker watched the men go to the Inn where they entered room 116. She had never seen these men before. She was still crying and was starting to calm down. The right side of her face felt numb.
>
> While speaking to Baker in the patrol car outside the Inn, Deputy Neff was approached by Mejeed Hunter, the man who was with defendant at the time of the attack.
>
> Hunter testified that he first met defendant the previous afternoon at Cesar Chavez Park. The men smoked crack cocaine and made their way to the Inn. Defendant and Hunter left room 116 of the Inn at approximately 1:30 a.m. and walked to Wong's Palace, a Chinese restaurant and bar. Defendant solicited people coming out of the bar for a ride. One of those patrons was Baker. She told the two men that she was stranded as well and was going to take a taxi. After learning that Baker had taxi fare, defendant, who was standing behind Baker, gestured to Hunter by putting his fist to his chin. Hunter did not take the gesture seriously because defendant looked comical. However, moments later, defendant stepped in front of Baker and grabbed her purse. When she resisted, he punched her three times in the face. After defendant gained control of the purse, he and Hunter went back to the motel room. Hunter returned to the motel room because he was afraid and did not know what to do.

---

[1]     Pursuant to 28 U.S.C. § 2254(e)(1), ". . . a determination of a factual issue made by a State court shall be presumed to be correct." Petitioner bears the burden of rebutting this presumption by clear and convincing evidence. See id. These facts are, therefore, drawn from the state court's opinion(s), lodged in this court. Petitioner may also be referred to as "defendant."

Once inside the motel room, defendant went through the purse. He became upset when he discovered it held no money. Hunter left moments later and approached Deputy Neff outside the motel. He left the room because he was very nervous.

*Defense*

Defendant challenged the credibility of Hunter's testimony through the testimony of two defense investigators who had questioned Hunter before trial. Defendant also presented evidence that he was wearing green pants on the morning of the robbery and not black sweat pants as described by Baker.

### B.   Procedural History

Petitioner was convicted following a jury trial of second degree robbery and falsely identifying himself to a police officer. The trial court found true the allegation that petitioner had one prior serious felony conviction. Petitioner was sentenced to 15 years in state prison concurrent with six months in county jail.

Petitioner's conviction and sentence were affirmed on direct appeal in a reasoned decision issued on September 25, 2002. On December 11, 2002, the California Supreme Court denied review. Petitioner subsequently filed three state habeas petitions. The Sacramento County Superior Court denied his first habeas petition in a reasoned decision issued on June 3, 2003. The Court of Appeal and California Supreme Court denied petitioner's second and third petitions without comment or citation.

## II.  STANDARDS OF REVIEW

Because this action was filed after April 26, 1996, the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") are presumptively applicable. See Lindh v. Murphy, 521 U.S. 320, 336 (1997); Calderon v. United States Dist. Ct. (Beeler), 128 F.3d 1283, 1287 (9th Cir. 1997), cert. denied, 522 U.S. 1099 (1998). The AEDPA does not, however, apply in all circumstances. When it is clear that a state court has <u>not</u> reached the merits of a petitioner's claim, because it was not raised in state court or because the court

1    denied it on procedural grounds, the AEDPA deference scheme does not apply and a federal

2    habeas court must review the claim de novo.  See Pirtle v. Morgan, 313 F.3d 1160 (9th Cir.

3    2002) (holding that the AEDPA did not apply where Washington Supreme Court refused to

4    reach petitioner's claim under its "relitigation rule"); see also Killian v. Poole, 282 F.3d 1204,

5    1208 (9th Cir. 2002) (holding that, where state court denied petitioner an evidentiary hearing on

6    perjury claim, AEDPA did not apply because evidence of the perjury was adduced only at the

7    evidentiary hearing in federal court); Appel v. Horn, 250 F.3d 203, 210 (3d Cir.2001) (reviewing

8    petition de novo where state court had issued a ruling on the merits of a related claim, but not the

9    claim alleged by petitioner).  When the state court does not reach the merits of a claim,

10   "concerns about comity and federalism . . . do not exist."  Pirtle, 313 F. 3d at 1167.

11           Where the AEDPA is applicable, federal habeas relief under 28 U.S.C. § 2254(d)

12   is not available for any claim decided on the merits in state court proceedings unless the state

13   court's adjudication of the claim:

14           (1) resulted in a decision that was contrary to, or involved an
             unreasonable application of, clearly established Federal law, as
15           determined by the Supreme Court of the United States; or

16           (2) resulted in a decision that was based on an unreasonable
             determination of the facts in light of the evidence presented in the State
17           court proceeding.

18   28 U.S.C. § 2254(d); see also Penry v. Johnson, 532 U.S. 782, 792-93 (2001); Williams v.

19   Taylor, 529 U.S. 362 (2000); Lockhart v. Terhune, 250 F. 3d 1223, 1229 (9th Cir. 2001).

20           Under § 2254(d), federal habeas relief is available where the state court's decision

21   is "contrary to" or represents an "unreasonable application of" clearly established law.  In

22   Williams v. Taylor, 529 U.S. 362 (2000) (O'Connor, J., concurring, garnering a majority of the

23   Court), the United States Supreme Court explained these different standards.  A state court

24   decsion is "contrary to" Supreme Court precedent if it is opposite to that reached by the Supreme

25   Court on the same question of law, or if the state court decides the case differently than the

26   Supreme Court has on a set of materially indistinguishable facts.  See id. at 405.  A state court

4

1   decision is also "contrary to" established law if it applies a rule which contradicts the governing

2   law set forth in Supreme Court cases.  See id.  In sum, the petitioner must demonstrate that

3   Supreme Court precedent requires a contrary outcome because the state court applied the wrong

4   legal rules.  Thus, a state court decision applying the correct legal rule from Supreme Court cases

5   to the facts of a particular case is not reviewed under the "contrary to" standard.  See id. at 406.

6   If a state court decision is "contrary to" clearly established law, it is reviewed to determine first

7   whether it resulted in constitutional error.  See Benn v. Lambert, 293 F.3d 1040, 1052 n.6 (9th

8   Cir. 2002).  If so, the next question is whether such error was structural, in which case federal

9   habeas relief is warranted.  See id.  If the error was not structural, the final question is whether

10  the error had a substantial and injurious effect on the verdict, or was harmless.  See id.

11          State court decisions are reviewed under the far more deferential "unreasonable

12  application of" standard where it identifies the correct legal rule from Supreme Court cases, but

13  unreasonably applies the rule to the facts of a particular case.  See id.; see also Wiggins v. Smith,

14  123 S.Ct. 252 (2003).  While declining to rule on the issue, the Supreme Court in Williams,

15  suggested that federal habeas relief may be available under this standard where the state court

16  either unreasonably extends a legal principle to a new context where it should not apply, or

17  unreasonably refused to extend that principle to a new context where it should apply.  See

18  Williams, 529 U.S. at 408-09.  The Supreme Court has, however, made it clear that a state court

19  decision is not an "unreasonable application of" controlling law simply because it is an

20  erroneous or incorrect application of federal law.  See id. at 410; see also Lockyer v. Andrade,

21  123 S.Ct. 1166, 1175 (2003).  An "unreasonable application of" controlling law cannot

22  necessarily be found even where the federal habeas court concludes that the state court decision

23  is clearly erroneous.  See Lockyer, 123 S.Ct. at 1175.  This is because ". . . the gloss of clear

24  error fails to give proper deference to state courts by conflating error (even clear error) with

25  unreasonableness."  Id.  As with state court decisions which are "contrary to" established federal

26  law, where a state court decision is an "unreasonable application of" controlling law, federal

habeas relief is nonetheless unavailable if the error was non-structural and harmless.  <u>See</u> <u>Benn</u>,

283 F.3d at 1052 n.6.

The "unreasonable application of" standard also applies where the state court

denies a claim without providing any reasoning whatsoever.  <u>See</u> <u>Himes v. Thompson</u>, 336 F.3d

848, 853 (9th Cir. 2003); <u>Delgado v. Lewis</u>, 233 F.3d 976, 982 (9th Cir. 2000).   Such decisions

are considered adjudications on the merits and are, therefore, entitled to deference under the

AEDPA.  <u>See</u> <u>Green v. Lambert</u>, 288 F.3d 1081 1089 (9th Cir. 2002); <u>Delgado</u>, 233 F.3d at 982.

The federal habeas court assumes that state court applied the correct law and analyzes whether

the state court's summary denial was based on an objectively unreasonable application of that

law.  <u>See</u> <u>Himes</u>, 336 F.3d at 853; <u>Delgado</u>, 233 F.3d at 982.

## III.  DISCUSSION

In his pro se petition, petitioner makes the following claims:

1.     Petitioner should be granted relief because the trial court committed reversible error when it ruled that Shonda Baker's hearsay statement to Deputy Neff . . . was admissible as an excited utterance;

2.     Petitioner should be granted relief because the trial court failed to adequately [instruct the jury in response] to a juror note submitted during deliberations;

3.     Petitioner should be granted relief because the trial court failed in its sua sponte duty to deliver accomplice jury instructions following testimony of Majeed Hunter supporting this theory;

4.     Petitioner was denied his Sixth and Fourteenth Amendment right to trial by jury drawn from a fair cross-section of the community;

5.     The prosecutor committed misconduct by improperly expressing her personal opinion concerning petitioner's guilt in violation of his due process right;

6.     The prosecutor committed misconduct by infringing upon petitioner's Fifth Amendment right not to be compelled to testify against himself at trial;

7.     The . . . prosecutor committed misconduct by improperly vouching for the credibility of its witnesses;

8.      The trial court violated petitioner's Sixth and Fourteenth Amendment [right] to compulsory process; and

9.      Petitioner was denied the effective assistance of counsel at trial.

Respondent concedes these claims are exhausted.

### A.   <u>Hearsay</u>

Petitioner claims the trial court erred by admitting evidence of Baker's hearsay statements to Deputy Neff.  Specifically, petitioner asserts:

> Ms. Shonda Baker gave . . . Deputy Neff two statements shortly after the charged crimes were committed.  The first statement came when the Deputy met Ms. Baker in the Raley's Shopping Market parking lot shortly after Baker reported the alleged robbery.  At trial. Deputy Neff characterized this statement as a brief overview of what was alleged to have taken place. . . .  The second statement taken by the Police was much more detailed and it was made outside of the First Value Inn, minutes after the first statement was made.  Most notably, this second statement . . . from Ms. Baker included a description of the robbery suspect.  At the outset of the trial, the trial court determined over Petitioner's objections that the statements were admissible as "excited utterances" within the meaning of the California Evidence Code. . . .  This trial court ruling led to the revelation at trial of both statements through the testimony of Deputy Neff.

Petitioner contends that the admission of this hearsay evidence resulted in a "violation of substantive rights."  In addressing this claim, the state court first concluded that the evidence was admissible under California law under the exception to the hearsay rule for spontaneous declarations.  As to the constitutional dimension of petitioners claim, the state court concluded that petitioner's right to confront witnesses was not violated because "'The hearsay exception for spontaneous declarations is among those "firmly rooted" exceptions that carry sufficient indicia of reliability to satisfy the Sixth Amendment's confrontation clause.'" (citations omitted).  The state court also addressed prejudice and held:

> Alternatively, admission of Baker's second statement to Neff was not prejudicial because it was cumulative of other evidence.  They jury heard Baker's first statement to Neff, in which she stated that two men approached her and took her purse.  The jury also heard Hunter's testimony identifying defendant as the perpetrator and describing the

7

crime's prelude, commission, and aftermath in far greater detail than appears in Baker's second statement.  Indeed, Hunter's testimony consumed 52 pages of trial transcript, whereas Baker's statement consumed just three pages. As we explain in part III . . .  Hunter was not an accomplice and his testimony did not require corroboration.  Contrary to defendant's argument, it was Hunter's eyewitness testimony, and not Baker's hearsay statement, which provided "the most persuasive element of the prosecution's case."  On this record, admission of Baker's statement was harmless by any standard.

The Confrontation Clause protects a defendant from unreliable hearsay evidence being presented against him during trial.  See U.S. Constitution, Amendment VI.  Prior to the Supreme Court's decision in Crawford v. Washington, 541 U.S. 36 (2004), the admission of hearsay evidence did not violate the Confrontation Clause where the hearsay fell within a firmly rooted exception to the hearsay rule and otherwise contained "particularized guarantees of trustworthiness." Lilly v. Virginia, 527 U.S. 116, 123-24 (1999); Ohio v. Roberts, 448 U.S. 56, 66 (1980).  In Crawford, however, the Supreme Court announced a new rule:  Out-of-court statements by witnesses not appearing at trial that are testimonial are barred under the Confrontation Clause unless the witnesses are unavailable and the defendant had a chance to cross-examine, regardless of whether such statements are deemed reliable by the trial court.  See 541 U.S. at 51.

While the Supreme Court in Crawford "le[ft] for another day any effort to spell out a comprehensive definition of 'testimonial,'" the Court provided some guidance. 541 U.S. at 68.  The Court observed that "[a]n accuser who makes a formal statement to government officers bears testimony in a sense that a person who makes a casual remark to an acquaintance does not." Id. at 51; see also Davis v. Washington, ___U.S.___, 126 S.Ct. 2266 (2006) (holding that law enforcement interrogations directed at establishing the facts of a past crime or in order to identify the perpetrator are testimonial).

Although the Crawford rule was not clearly established law at the time that the criminal proceedings in petitioner's case took place, the Ninth Circuit held in Bockting v. Bayer, that the Crawford rule should be applied retroactively on collateral review.  See 399 F.3d 1010.

Accordingly, the court recognizes that, under <u>Bockting</u>, extending the holding of <u>Crawford</u> to the instant case does not violate the non-retroactivity principle set forth in <u>Teague v. Lane</u>, 489 U.S. 288 (1989).[2]

In considering this claim, the state court applied <u>Lilly v. Virginia</u> and <u>Ohio v. Roberts</u>.  Because it did not apply the new rule of <u>Crawford</u> – which is retroactive – it did not apply the correct rule of law.  Thus, this court must review under the "contrary to" standard.  Under this standard, the court's task is to determine first whether the state court decision resulted in constitutional error.  <u>See</u> <u>Benn</u>, 293 F.3d at 1052 n.6.  If error occurred, the next question is whether such error was harmless.  <u>See</u> <u>Bockting</u>, 399 F.3d at 1022 (applying harmless error analysis).

In the presence of the jury, Deputy Neff testified, in relevant part, as follows:

> Q:     Did you take a statement from Ms. Baker while she was at Raley's?
>
> A:     I took a brief statement.
>
> * * *
>
> Q:     And what did [Ms. Baker] tell you at that time?
>
> A:     She told me that at about 2:00 o'clock in the morning she was standing out in front of Wong's Palace, which is just down from the Raley's in the same shopping complex, and while she was standing out there, two guys came up to her, approached her and basically stole her purse.
>
> Q:     And at that point what did you do next?

---

[2]     In <u>Teague v. Lane</u>, the Supreme Court held that new constitutional rules of criminal procedure will not be applicable to those cases which have become final before the new rules are announced unless they fall within two exceptions to the general rule.  <u>See</u> 489 U.S. 288 (1989).  The two exceptions are if the new constitutional rule of criminal procedure would "place certain kinds of primary, private individual conduct beyond the power of criminal-law making authority..." or "require the observance of 'those procedures that...are 'implicit in the concept of ordered liberty.'"  <u>Id.</u> at 307; <u>see also</u>, <u>Sawyer v. Smith</u>, 497 U.S. 227, 242 (1990) (stating that rules are properly considered retroactive when they alter our understanding of the bedrock procedural elements essential to the fairness of a proceeding).  In <u>Bockting</u>, the Ninth Circuit held that <u>Crawford</u> applied retroactively because it altered the understanding of the bedrock procedural elements essential to the fairness of a proceeding.  <u>See</u> 399 F.3d at 1019-20.

A:     Well, she told me that she had followed these two guys across the street to the First Value Inn, which is a motel, so I put her in the back set of my car and we drove over to that parking lot.

* * *

Q:     And while in the parking lot, what did you do?

A:     Then I began taking a detailed statement from her.

Q:     And what did she tell you at that time; how did this incident start?

A:     That she was waiting for a taxi outside of Wong's Palace when two black males walked up to her and they had asked her a question about if they could give her a ride – if she could give them a ride up to North Sacramento, and she basically told them she did not have a car, that she was waiting for a taxi.

Q:     And when she told them she was waiting for a taxi, did she give you a description of the two males that approached her?

A:     Yes, she did.

* * *

A:     The first subject she described as a black male about five ten, he was wearing black sweat pants and a red shirt and he had a ponytail, small ponytail on the back of his head.  The second guy, she didn't have a clothing description of him, but I believe she said he was about five eight, a hundred and fifty pounds.

Q:     Also a black male?

A:     Also a black male.

Q:     And after they had this conversation that she said she was getting a taxi, what happened next?

A:     Well, there was some discussion about her having money to pay for a taxi.

Q:     Who did she have this discussion with?

A:     The first guy, the guy with the ponytail.

Q:     Okay.  And at that point what did she say happened?

A:     She said she had her purse hung over her shoulder and just all of a sudden, the guy punched her three times in the face and took her purse.

10

1   Deputy Neff then testified as to what Baker told him about the actual incident and the injuries

2   she sustained.  Neff further testified as follows:

3         Q:    So when these two guys ran off, what did she do at that point?

4         A:    She wanted to follow them.  What she told me she was scared, she
    didn't want them to see where she was running to or she was following

5         them, but she did watch them go over to the First Value Inn where they
    entered the motel room.

6
          Q:    Was she able to give you the motel room number?

7         A:    Yes.

8

9         The first question for this court is whether admission of this hearsay testimony

10   concerning what Baker told Neff violates the rule announced in Crawford.  The court concludes

11   that the hearsay in question is testimonial in nature because it was given by a crime victim to a

12   police officer during the course of a criminal investigation.  Therefore, the statements are barred

13   unless: (1) Baker was unavailable; and (2) petitioner had a chance to cross-examine.  As to

14   Baker's unavailability, it appears that Baker simply refused to cooperate with the prosecutor with

15   respect to appearing at trial.  Specifically, the prosecutor told the trial court that she had tried to

16   contact Baker numerous times leading up to trial and became suspicious that Baker would not

17   show up.  In any event, regardless of whether Baker was available or not, there is no indication

18   whatsoever that petitioner ever had an opportunity to cross-examine Baker's statements to Neff

19   in any other context.   Therefore, under Crawford, admission of Baker's out-of-court statements

20   violated petitioner's Confrontation Clause rights and, for this reason, the court concludes that

21   constitutional error occurred.

22         The next question is whether the error was harmless.  See Bockting, 399 F.3d at

23   1022.  In an order amending the original Bockting opinion to apply the harmless error standard

24   set out in Brecht v. Abrahamson, 507 U.S. 619 (1993), the Ninth Circuit concluded that, because

25   the hearsay in question "was so significant as corroborating evidence that its admission had a

26   substantial and injurious effect or influence in determining the jury's verdict," admission of the

hearsay was not harmless beyond a reasonable doubt.  Bockting, 399 F.3d at 1022, as amended on denial of rehearing, 408 F.3d 1127 (2005) (order).   Similarly, Baker's out-of-court statements constitute significant corroborating evidence.   In particular, the hearsay corroborated Hunter's testimony.  While the court agrees with the state court that corroboration of Hunter's testimony is not required because Hunter was not an accomplice, the lack of a legal requirement for corroboration does not lessen the injurious effect the hearsay may have had in influencing the jury's verdict.  In this respect, the court does not agree with the state court, which did not have the benefit of Crawford and Bockting when it issued its decision.

Because the court concludes that constitutional error occurred and that such error was not harmless beyond a reasonable doubt, habeas corpus relief is warranted on this claim.

### B.    Jury Instruction Claims

Petitioner's second and third claims challenge jury instructions.  Specifically, in petitioner's second claim concerning the trial court's response to a note from a juror, petitioner asserts that the trial court erred by not rereading CALJIC No. 2.90 regarding proof beyond a reasonable doubt when it responded to the juror's note.   In his third claim, petitioner argues that the trial court failed to sua sponte instruct the jury under CALJIC Nos. 3.10, 3.11, and 3.18 regarding accomplice testimony.

A writ of habeas corpus is available under 28 U.S.C. § 2254 only on the basis of a transgression of federal law binding on the state courts.  See Middleton v. Cupp, 768 F.2d 1083, 1085 (9th Cir. 1985); Gutierrez v. Griggs, 695 F.2d 1195, 1197 (9th Cir. 1983).  It is not available for alleged error in the interpretation or application of state law.  Middleton, 768 F.2d at 1085; see also Lincoln v. Sunn, 807 F.2d 805, 814 (9th Cir. 1987); Givens v. Housewright, 786 F.2d 1378, 1381 (9th Cir. 1986).  Habeas corpus cannot be utilized to try state issues de novo.  See Milton v. Wainwright, 407 U.S. 371, 377 (1972).  Thus, a challenge to jury instructions does not generally give rise to a federal constitutional claim.  See Middleton, 768 F.2d at 1085) (citing Engle v. Isaac, 456 U.S. 107, 119 (1982)).

1        However, a "claim of error based upon a right not specifically guaranteed by the

2  Constitution may nonetheless form a ground for federal habeas corpus relief where its impact so

3  infects the entire trial that the resulting conviction violates the defendant's right to due process."

4  Hines v. Enomoto, 658 F.2d 667, 673 (9th Cir. 1981) (citing Quigg v. Crist, 616 F.2d 1107 (9th

5  Cir. 1980)); see also Lisenba v. California, 314 U.S. 219, 236 (1941).  In order to raise such a

6  claim in a federal habeas corpus petition, the "error alleged must have resulted in a complete

7  miscarriage of justice."  Hill v. United States, 368 U.S. 424, 428 (1962); Crisafi v. Oliver, 396

8  F.2d 293, 294-95 (9th Cir. 1968); Chavez v. Dickson, 280 F.2d 727, 736 (9th Cir. 1960).

9        In general, to warrant federal habeas relief, a challenged jury instruction "cannot

10  be merely 'undesirable, erroneous, or even "universally condemned,"' but must violate some due

11  process right guaranteed by the fourteenth amendment."  Prantil v. California, 843 F.2d 314, 317

12  (9th Cir. 1988) (quoting Cupp v. Naughten, 414 U.S. 141, 146 (1973)).  To prevail, petitioner

13  must demonstrate that an erroneous instruction "'so infected the entire trial that the resulting

14  conviction violates due process.'"  Estelle v. McGuire, 502 U.S. 62, 72 (1991) (quoting Cupp,

15  414 U.S. at 147).  In making its determination, this court must evaluate the challenged jury

16  instructions "'in the context of the overall charge to the jury as a component of the entire trial

17  process.'"  Prantil, 843 F.2d at 817 (quoting Bashor v. Risley, 730 F.2d 1228, 1239 (9th Cir.

18  1984)).  Further, in reviewing an allegedly ambiguous instruction, the court "must inquire

19  'whether there is a reasonable likelihood that the jury has applied the challenged instruction in a

20  way' that violates the Constitution."  Estelle, 502 U.S. at 72 (quoting Boyde v. California, 494

21  U.S. 370, 380 (1990)).  Petitioner's burden is "especially heavy" when the court fails to give an

22  instruction.  Henderson v. Kibbe, 431 U.S. 145, 155 (1977).

23        It is well-established that the burden is on the prosecution to prove each and every

24  element of the crime charged beyond a reasonable doubt.  See In re Winship, 397 U.S. 358, 364

25  (1970).  Therefore, due process is violated by jury instructions which use mandatory

26  presumptions to relieve the prosecution's burden of proof on any element of the crime charged.

See <u>Francis v. Franklin</u>, 471 U.S. 307, 314 (1985); <u>see also</u> <u>Sandstrom v. Montana</u>, 442 U.S. 510 (1979).  A mandatory presumption is one that instructs the jury that it must infer the presumed fact if certain predicate facts are proved.  <u>See</u> <u>Francis</u>, 471 U.S. at 314.  On the other hand, a permissive presumption allows, but does not require, the trier of fact to infer an elemental fact from proof of a basic fact.  <u>See</u> <u>County Court of Ulster County v. Allen</u>, 442 U.S. 140, 157 (1979).  The ultimate test of the constitutionality of any presumption remains constant – the instruction must not undermine the factfinder's responsibility at trial, based on evidence adduced by the government, to find the ultimate facts beyond a reasonable doubt.  <u>See</u> <u>id.</u> at 156 (citing <u>In re Winship</u>, 397 U.S. at 364).

      1.   <u>Juror Note</u>

As to petitioner's claim that the trial court erred by failing to instruct the jury under CALJIC No. 2.90 in response to the juror's note, the state court said:

> *Background*
>
> Juror No. 1 submitted a note stating, "I am having a difficult time with Shonda Baker's validity.  I feel the defense should be afforded [the chance] to cross-examine the victim.  I understand the People are charging Henderson with the crime and not Baker.  But I am almost certain the events of that night happened in a different way.  Is this just cause to support my reasonable doubt?  Did not know the absence of Baker would've had such an effect on my verdict."
>
> * * *
>
> In response, the trial court told the jurors, "all the instructions are important considering what you all find to be the facts."  The court then reread CALJIC No. 2.11, which provided, "Neither side is required to call as witnesses all persons who may have been present at any of the . . . events disclosed by the evidence or who may appear to have some knowledge of these events.  Neither side is required to produce all objects or documents mentioned or suggested by the evidence."  The court also reread CALJIC No. 1.03, which provided in relevant part, "You must decide all questions of fact in this case from the evidence received in this trial and not from any other source.  You must not independently investigate the facts or the law or consider or discuss facts as to which there is no evidence.  This means, for example, that you must not on your own visit the scene, conduct experiments or consult reference works or persons for additional information."

1          Defense counsel then objected that CALJIC No. 2.11 "should have
been included with the rereading of the presumption and the burden on the
2     People."

3          *Analysis*

4          Defendant claims the trial court should have "referred to" CALJIC
No. 2.90 for two reasons, because Juror No. 1 "did not fully understand"
5     the concept of reasonable doubt and because "CALJIC No. 2.11 alone
advised the juror that any deficiency that she may have found in the
6     prosecution's case due to Shonda Baker's absence was not to be
considered by her as a lack of proof" of his guilt.  Neither point has merit.
7          Juror No. 1. did not display any misunderstanding of the concept
of reasonable doubt.  Rather, she perceptively asked whether her belief
8     that "the events . . . happened in a different way" was sufficient to raise a
reasonable doubt.  While not demonstrating any misunderstanding, the
9     question raised an issue that was entrusted to the jury's determination and
could not be answered by the court.  Thus, the court properly refrained
10    from instructing as to how much significance could be attached to Baker's
absence.
11

12         The trial court's comment that "all the instructions are important
considering what you all find to be the facts" told the jurors that
13    instructions such as CALJIC No. 2.90 remained important even though
they were not reread along with CALJIC Nos. 2.11 and 1.03.  Thus, the
14    jury was told not to consider "CALJIC No. 2.11 alone," as defendant
suggests.  The jury had no basis to draw the erroneous conclusion that
15    "any deficiency" in the prosecution case "due to Baker's absence was not
to be considered" as a lack of proof of guilt.  There was no error.

16

17   Because the state court considered whether the failure to reread CALJIC No. 2.90 affected the

18   jury's understanding of its role, this court concludes that it applied the correct law and will,

19   therefore, review under the "unreasonable application of" standard.

20         As the state court observed, there is no evidence to suggest that any member of

21   the jury did not understand the concept of reasonable doubt.  In fact, as Juror No. 1's note

22   demonstrates, the concept was clear.  The juror simply wanted to know whether Baker's absence

23   constituted reasonable doubt, a question which the trial court could not answer.  Moreover,

24   because the trial court instructed the jury that all instructions were important, and because it

25   must be presumed that the jury followed all instructions it was given, there was no danger that

26   the failure to reread CALJIC No. 2.90 somehow diminished the prosecution's burden.

1                    2.      Accomplice Testimony

2              As to petitioner's claim that the trial court erred by failing to sua sponte instruct

3    the jury regarding accomplice testimony, the state court stated:

4              Defendant contends the trial court erred by failing to deliver
        accomplice instructions on its own motion following the testimony of
5        Majeed Hunter.  We are not persuaded.
              "Under section 1111, an accomplice is 'one  who is liable to
6        prosecution for the identical offense charged against the defendant on trial
        in the cause in which the testimony of the accomplice is given.'  To be
7        chargeable with an identical offense, a witness must be considered a
        principal under section 31. [Citation.] An accomplice must have '"guilty
8        knowledge and intent with regard to the commission of the crime."'
        [Citation.]  'If there is evidence from which the jury could find that a
9        witness is an accomplice to the crime charged, the court must instruct the
        jury on accomplice testimony. [Citation.] But if the evidence is
10       insufficient as a matter of law to support a finding that a witness is an
        accomplice, the trial court may make that determination and, in that
11       situation, need not instruct the jury on accomplice testimony. [Citation.]'
        [Citations.]"
12            In order for a witness to be deemed an accomplice, "the record
        must establish . . . either that the witnesses aided and abetted defendant in
13       committing the [robbery] [citations] or was involved in a conspiracy in
        which that person harbored the intent to commit the offense that was the
14       object of the conspiracy. [Citation.]" In this case, there was no evidence
        that Hunter aided or abetted, or conspired with, defendant.
15            Instead, defendant relies on evidence that Hunter was with him
        "before, during, and after the robbery" and "did not part company" with
16       him "until after it was determined the robbery had not resulted in any
        financial gain."  However, neither presence at the scene of a crime nor
17       failure to prevent its commission is sufficient to establish aiding or
        abetting.  Nor is "general willingness . . . to violate the law" sufficient;
18       Hunter's admission "to smoking crack cocaine on the day in question" did
        not suggest he was an accomplice to second degree robbery.
19            Because the evidence was insufficient as a matter of law to support
        a finding that Hunter was an accomplice, the trial court was not required
20       to instruct the jury on accomplice testimony.

21

22             Here, the state court held that, under California law, there was insufficient

23   evidence that Hunter was an accomplice.  The state court concluded, therefore, that the duty to

24   give accomplice testimony instructions was never triggered.  This court agrees and cannot say

25   that the state court's adjudication of this claim was either "contrary to" or an "unreasonable

26   application of" federal law.  Specifically, the facts reveal that Hunter did not take petitioner's

gesture of putting his fist to his chin seriously and that Hunter only went with petitioner to the

motel after the incident because he was afraid.  There is no evidence that Hunter shared

petitioner's specific intent.  Therefore, Hunter was not an accomplice.

### C.    Jury Composition

Petitioner – who is black – contends that he was denied a fair jury of his peers

because the jury consisted of only white people.  Petitioner does not argue that the prosecutor

improperly challenged black venirepersons.  Rather, his argument is that there simply were no

blacks in the pool of prospective jurors called for his case.   This claim was first raised in the

state court in petitioner's first habeas corpus petition.  The state court denied the claim as

procedurally defaulted because it could have been raised on direct appeal.  Respondent argues

that this court is, therefore, barred from reviewing the claim.  Respondent also argues that the

claim fails on the merits.

Assuming,  without deciding, that this court can reach the merits, to prevail

petitioner must show: (1) that the group alleged to have been excluded is distinctive; (2) that the

representation of this group in the venire pool is not fair and reasonable in light of the number of

such persons in the community; and (3) that the lack of adequate representation of the group is

due to systematic exclusion in the jury selection process.  See Duren v. Missouri, 439 U.S. 357

(1979); United States v. Bushyhead, 270 F.3d 905, 909-10 (9th Cir. 2001).  In this case, there is

no evidence of systematic exclusion of blacks on venire panels.  Therefore, whether on the

merits or as a result of a procedural bar, this claim should be denied.

### D.    Prosecutorial Misconduct Claims

Petitioner raises three claims of prosecutorial misconduct.  First, he argues that

the prosecutor improperly expressed her personal opinion concerning petitioner's guilt.  Second,

petitioner contends that the prosecutor improperly sought self-incriminating testimony.  Third,

petitioner claims that the prosecutor improperly vouched for the credibility of prosecution

witnesses.  As with his jury composition claim, these three claims were not raised on direct

17

1    appeal and were denied by the state habeas court for this procedural reason.  Respondent argues

2    that this court is procedurally barred from reviewing the claims and also that they fail on the

3    merits.

4           Again, assuming, without deciding, that this court may reach the merits, success

5    on a claim of prosecutorial misconduct requires a showing that the conduct so infected the trial

6    with unfairness as to make the resulting conviction a denial of due process.  See Greer v. Miller,

7    483 U.S. 756, 765 (1987).  The conduct must be examined to determine "whether, considered in

8    the context of the entire trial, that conduct appears likely to have affected the jury's discharge of

9    its duty to judge the evidence fairly."  United States v. Simtob, 901 F.2d 799, 806 (9th Cir.

10   1990).  Even if an error of constitutional magnitude is determined, such error is considered

11   harmless if the court, after reviewing the entire trial record, concludes that the alleged error did

12   not have a "substantial and injurious effect or influence in determining the jury's verdict."

13   Brecht v. Abrahamson, 507 U.S. 619, 638 (1993).  Error is deemed harmless unless it "is of such

14   a character that its natural effect is to prejudice a litigant's substantial rights."  Kotteakos v.

15   United States, 328 U.S. 750, 760-761 (1946).  Depending on the case, a prompt and effective

16   admonishment of counsel or curative instruction from the trial judge may effectively "neutralize

17   the damage" from the prosecutor's error.  United States v. Weitzenhoff, 35 F.3d 1275, 1291 (9th

18   Cir. 1993) (citing Simtob, 901 F.2d at  806).

19           1.    Opinion

20           Petitioner challenges two statements made by the prosecutor during her closing

21   arguments.[3]  Specifically, petitioner claims:

22           . . . Petitioner . . . contends that the State prosecutor improperly
             interjected her personal opinion with regard to Petitioner's credibility and
23           guilt by calling him a liar by stating: (1) "The first words that come out of
             Mr. Henderson's mouth during this whole incident was a lie." and (2)

24

25           [3]    In his statement of this claim, petitioner also challenges other statements made
     during closing which he alleges improperly vouched for witness credibility.  This will be
26   discussed below in section III.D.3.

1  "And so the person that has truly lied to us so far is the defendant."

2  This claim lacks merit because the prosecution may properly label testimony as lies or

3  fabrication.  See Turner v. Marshall, 63 F.3d 807, 818 (9th Cir. 1995); United States v. Sarno, 73

4  F.3d 1470, 1496-97 (9th Cir. 1995); Dubria v. Smith, 224 F.3d 995, 1004 (9th Cir. 2000) (en

5  banc).  Moreover, the trial court neutralized any possible error by instructing the jury that

6  comments made by counsel during closing argument are not evidence.

7         2.   Self-Incrimination

8  Petitioner challenges the following statement made by the prosecutor during her

9  closing arguments:

10     He was within the same time frame that the Raley's people saw
   her.  He was within the same time frame that Neff saw her.  It was all

11 within the same time, it all came together where they ran, there the purse
   ended up, and everybody who testified all corroborated Mr. Hunter's

12 testimony and Shonda Baker's testimony.  You have heard no other
   evidence of anything else regarding as to how this happened.

13

14 Specifically, petitioner asserts:

15     . . . The comment improperly suggests that it is highly unlikely that
   anyone else other than Petitioner could contradict, deny, rebut, or dispute

16 the State prosecution's evidence.  Thus, the State prosecutor's comments
   on Petitioner's failure to testify violates not only the Fifth Amendment,

17 but also due process right to a fair trial and therefore requires a reversal of
   Petitioner's conviction.

18

19 On the merits of petitioner's claim that the prosecutor's comments improperly

20 brought attention to petitioner's decision not to testify, the court agrees with respondent that no

21 error occurred.  First, the prosecutor's statement neither asked the jury to draw an adverse

22 inference from the lack of testimony from petitioner, nor asked the jury to treat petitioner's

23 silence as substantive evidence of guilt.  See Griffin v. California, 380 U.S. 609, 615 (1965).

24 Second, the comments were not extensive.  See Jeffries v. Blodgett, 5 F.3d 1180, 1192 (9th Cir.

25 1993).  Third, the prosecutor never asserted petitioner's silence as a basis for conviction.  See id.

26 The court finds that the prosecutor's statements were directed to the lack of evidence in support

of the defense, and not directed specifically to petitioner's decision not to testify.

### 3.   Vouching

Petitioner claims that the prosecutor committed misconduct by improperly vouching for the credibility of prosecution witnesses.  In his fifth claim for relief, petitioner challenges the following comment made by the prosecutor during her closing arguments:

> When I flip through a file in my office and read through the facts of the case, I have to make a determination can I prove this beyond a reasonable doubt?  And I know what that standard is.

Petitioner argues:

> . . . This comment is improper because the State prosecutor is personally vouching for the strength of the Government's case and that she would not have presented the case to the jury had she not known that the Petitioner was guilty.

In his seventh claim for relief, petitioner asserts that the prosecutor also improperly vouched for Hunter's testimony and Baker's out-of-court statements.   As to Hunter, petitioner challenges the following statements made by the prosecutor:

> Now, Mr. Hunter told you what he saw, and he was honest and he was pretty forthcoming with you.  He had nothing to hide.
>
> * * *
>
> And but what – and so, he had nothing to hide, nothing, didn't do anything to make himself sound or look better, so he just came in and told you the truth.  He told you the truth here.
>
> * * *
>
> Now, Mr. Hunter came in here and told you the truth.  Keeping in mind his reputation is on the line, he had to tell these people what he did that day. . . .
> And he has been truthful and forthright here. . . .

As to Baker, petitioner challenges the following statements made by the prosecutor:

> Shonda Baker's testimony came through Officer Neff, and that testimony came in through Officer Neff because it is reliable testimony and it is a reliable statement . . .
>
> * * *

1   . . . There is absolutely no motive for her to lie in this case.

2   In bolstering a witness's credibility, a prosecutor may not overstep the bounds of

3   propriety and fairness.  Vouching is improper when the prosecutor places "the prestige of the

4   government behind the witness" by providing "personal assurances of [the] witness's veracity."

5   United States v. Kerr, 981 F.2d 1050, 1053 (9th Cir. 1992) (citing United States  v. Roberts, 618

6   F.2d 530, 533 (9th Cir. 1980)).  "A prosecutor has no business telling the jury his individual

7   impressions of the evidence."  Id.   There is no bright-line rule about when improper vouching

8   has occurred.   A number of factors must be weighed including: (1) the form of vouching;

9   (2) how much the vouching implies that the prosecutor has knowledge outside the record of the

10   witness's truthfulness; (3) any inference that the court is monitoring the witness's veracity; (4)

11   the degree of personal opinion asserted; (5) the timing of the vouching; (6) the extent to which

12   the witness's credibility was attacked; (7) the specificity and timing of a curative instruction; and

13   (8)  the importance of the witness's testimony and the vouching to the case overall.  See United

14   States v. Jackson, 84 F.3d 1154, 1158, 1278 (9th Cir. 1996).  When reviewing for plain error, the

15   court must then balance the seriousness of the vouching against the strength of any curative

16   instruction and closeness of the case.  Statements bearing on credibility that are plainly advanced

17   as argument do not constitute vouching.  See id.

18   As to the prosecutor's comments regarding the burden of proof, the court finds

19   that there was no vouching.  Specifically, the prosecutor did not give any personal assurances as

20   to the veracity of specific evidence.  Rather, the comments were part of the prosecutor's larger

21   explanation of the burden of proof in criminal cases.  Similarly, as to the prosecutor's comments

22   regarding Hunter and Baker, she was simply outlining why she thought the evidence shows they

23   are credible.  Because the prosecutor did not refer to evidence outside the record or make any

24   personal guarantees as to truthfulness, there was no error.  See United States v. Necoechea, 986

25   F.2d 1273, 1279 (9th Cir. 1993).

26   ///

21

E.     **Compulsory Process**

Petitioner claims that his constitutional compulsory process right to present witnesses in his own defense was violated when the trial court excluded "evidence and cross-examination regarding Shonda Baker's untruthfulness and credibility."  Specifically, petitioner asserts that the trial court erred: (1) by excluding evidence that, on a prior occasion, Baker had been arrested by Neff; and (2) by refusing to allow petitioner to cross-examine Neff concerning false statements made to him by Baker.  This claim was not raised on direct appeal and the state habeas court denied is as procedurally defaulted.  Respondent argues that this court is barred from reviewing the claim and also argues that, in any event, it lacks merit.  Again, the court will assume,  without deciding, that the claim is not barred and will address the merits directly.

At the outset, the court observes that petitioner's claim in essence presents a challenge to the state court's evidentiary rulings.[4]  A writ of habeas corpus is available under 28 U.S.C. § 2254 only on the basis of a transgression of federal law binding on the state courts.  See Middleton v. Cupp, 768 F.2d 1083, 1085 (9th Cir. 1985); Gutierrez v. Griggs, 695 F.2d 1195, 1197 (9th Cir. 1983).  It is not available for alleged error in the interpretation or application of state law.  Middleton, 768 F.2d at 1085; see also Lincoln v. Sunn, 807 F.2d 805, 814 (9th Cir. 1987); Givens v. Housewright, 786 F.2d 1378, 1381 (9th Cir. 1986).  Habeas corpus cannot be utilized to try state issues de novo.  See Milton v. Wainwright, 407 U.S. 371, 377 (1972).

However, a "claim of error based upon a right not specifically guaranteed by the Constitution may nonetheless form a ground for federal habeas corpus relief where its impact so infects the entire trial that the resulting conviction violates the defendant's right to due process."  Hines v. Enomoto, 658 F.2d 667, 673 (9th Cir. 1981) (citing Quigg v. Crist, 616 F.2d 1107 (9th Cir. 1980)); see also Lisenba v. California, 314 U.S. 219, 236 (1941).  Because federal habeas relief does not lie for state law errors, a state court's evidentiary ruling is grounds for federal

---

[4]      Petitioner does not present any evidence of governmental misconduct, such as witness intimidation, which is required for a claim of denial of compulsory process.

1   habeas relief only if it renders the state proceedings so fundamentally unfair as to violate due

2   process.  See Drayden v. White, 232 F.3d 704, 710 (9th Cir. 2000); Spivey v. Rocha, 194 F.3d

3   971, 977-78 (9th Cir. 1999); Jammal v. Van de Kamp, 926 F.2d 918, 919 (9th Cir. 1991); see

4   also Hamilton v. Vasquez, 17 F.3d 1149, 1159 (9th Cir. 1994).   In order to raise such a claim in

5   a federal habeas corpus petition, the "error alleged must have resulted in a complete miscarriage

6   of justice."  Hill v. United States, 368 U.S. 424, 428 (1962); Crisafi v. Oliver, 396 F.2d 293, 294-

7   95 (9th Cir. 1968); Chavez v. Dickson, 280 F.2d 727, 736 (9th Cir. 1960).

8            In this case, the following exchange occurred between the trial court and

9   petitioner's counsel regarding evidence that Baker had been arrested by Neff on a prior occasion:

10              THE COURT:          . . . And simply because a person has been arrested,
                what does that mean?
11

12              MR. BONHAM:      Well, what that means is that this woman has
                avoided, has intentionally avoided coming in as a witness because of the
                fact that she has a warrant apparently, a warrant out for her arrest.
13

14              THE COURT:       I tell you the truth, if that's what you are going to
                do, that doesn't mean anything to me, and that is speculative, it is
                collateral and it would result in an undue consumption of time.  And if
15              that's what you wish to get into, under Evidence Code section 352, for the
                reason I just stated, you shall not get into it.
16

17   Petitioner has not alleged how this evidentiary ruling so infected the trial as to render it

18   fundamentally unfair in violation of due process.  This court agrees with the trial court that

19   evidence that Baker had been arrested on a previous occasion is collateral and simply not

20   relevant.

21            As to petitioner's efforts to cross-examine Neff, the following exchange took

22   place:

23              THE COURT:       All right.  We are outside the presence of the jury.
                There is an objection.  Mr. Bonham.
24

25              MR. BONHAM:      Yes, your honor.  On the evening, August 13th, the
                alleged victim identified herself as Shonda Teresa Baker, with a date of
                birth of 3-19-1956.
26

                                          23

1    THE COURT:          Yes.

2    MR. BONHAM:          When this officer arrested Ms. – the alleged victim
     on November 12th for being drunk in public, she –
3
                         * * *
4
     MR. BONHAM:          She identified herself as Shonda Marie Divengenes
5    with a date of birth of February 22nd, 1958.

6    THE COURT:          So what's the point?

7    MR. BONHAM:          The point is that the victim here lied, and I believe
     that I have a right to present that to the jury, that the victim has
8    misidentified herself to this officer subsequently, and this – this officer
     doesn't know who she is.
9
     THE COURT:          The objection is sustained for the same reasons that
10   I have already sustained the objection earlier under 352.  It is adequately
     in the record.  I see no reason to change the ruling.
11
                         * * *
12
     MR. BONHAM:          I mean, this would take no more than five minutes.
13
     THE COURT:          It is not the duration of time.  It is the relevance.  It
14   is the undue consumption of time.  You tried to get into this area to
     indicate that this officer arrested the victim some months after this crime
15   for drunk in public.  You were trying to establish a theory to get it in, and
     I see no difference, and the objection is sustained.
16
     MR. BONHAM:          Just for the record, I believe that this goes to the
17   trustworthiness of –

18   THE COURT:          Please, the record is adequately covered. . . .

19   The court is more troubled with this evidentiary ruling.  Unlike the previous ruling concerning

20   Baker's prior arrest, which is truly a collateral issue, petitioner sought to cross-examine Neff

21   concerning matters which impacted the trustworthiness of Baker's statements at the scene.

22   Specifically, evidence that Baker lied about her identity is directly relevant to the believability of

23   her out-of-court statements to Neff the night of the incident.

24           As discussed above, the court has concluded that petitioner's right to confront

25   Baker was violated by admission of her out-of-court statements made to Neff.  This is a

26   structural error going to the fundamental fairness of petitioner's trial.  The evidentiary ruling

                                          24

1   precluding petitioner's counsel from cross-examining Neff as to Baker's credibility only

2   underscores the problem created by use of the hearsay testimony in the first place.  Had the

3   prosecution either issued a subpoena for Baker to testify at trial, or had she simply not used the

4   hearsay at all, this problem would not have arisen.  The trial court's refusal to allow the cross-

5   examination in question only compounded the structural error that had already occurred when

6   Baker's out-of-court statements were admitted.

7           **F.**     **Ineffective Assistance of Counsel**

8                 Petitioner claims that he received ineffective assistance of trial counsel when his

9   attorney failed to object during the prosecution's closing arguments.  The Sixth Amendment

10   guarantees the effective assistance of counsel.  The United States Supreme Court set forth the

11   test for demonstrating ineffective assistance of counsel in <u>Strickland v. Washington</u>, 466 U.S.

12   668 (1984).  First, a petitioner must show that, considering all the circumstances, counsel's

13   performance fell below an objective standard of reasonableness.  <u>See id.</u> at 688.  To this end,

14   petitioner must identify the acts or omissions that are alleged not to have been the result of

15   reasonable professional judgment.  <u>See id.</u> at 690.  The federal court must then determine

16   whether, in light of all the circumstances, the identified acts or omissions were outside the wide

17   range of professional competent assistance.  <u>See id.</u>  In making this determination, however,

18   there is a strong presumption "that counsel's conduct was within the wide range of reasonable

19   assistance, and that he exercised acceptable professional judgment in all significant decisions

20   made."  <u>Hughes v. Borg</u>, 898 F.2d 695, 702 (9th Cir. 1990) (citing <u>Strickland</u>, 466 U.S. at 689).

21                 Second, a petitioner must affirmatively prove prejudice.  <u>See</u> <u>Strickland</u>, 466 U.S.

22   at 693.  Prejudice is found where "there is a reasonable probability that, but for counsel's

23   unprofessional errors, the result of the proceeding would have been different."  <u>Id.</u> at 694.  A

24   reasonable probability is "a probability sufficient to undermine confidence in the outcome."  <u>Id.</u>;

25   <u>see also</u> <u>Laboa v. Calderon</u>, 224 F.3d 972, 981 (9th Cir. 2000).  A reviewing court "need not

26   determine whether counsel's performance was deficient before examining the prejudice suffered

25

1   by the defendant as a result of the alleged deficiencies . . . If it is easier to dispose of an

2   ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be

3   followed." Pizzuto v. Arave, 280 F.3d 949, 955 (9th Cir. 2002) (quoting Strickland, 466 U.S. at

4   697).

5              Applying the Strickland standard to petitioner's claim, the state court stated:

6              Petitioner claims that trial counsel was ineffective for failing to
        object to prosecutorial misconduct during the trial.  Petitioner alleges that
7       the prosecutor gave her personal opinion on Petitioner's guilt, referred to
        Petitioner's failure to testify, and vouched for the credibility of prosecution
8       witnesses.  However, petition has produced neither evidence of the alleged
        prosecutorial misconduct, nor evidence to show that counsel failed to
9       object.  Therefore, Petitioner has failed to show that counsel's conduct was
        deficient.  Likewise, he has not shown that he was prejudiced by the
10      omissions.

11   Because the state court applied the correct federal law, this court reviews under the "unreasonable

12   application of" standard.  As discussed above, there was no prosecutorial misconduct.  Therefore,

13   as the state court reasoned, counsel's performance could not have been deficient in the way

14   petitioner argues.

15   ///

16   ///

17   ///

18   ///

19   ///

20   ///

21   ///

22   ///

23   ///

24   ///

25   ///

26   ///

## IV.  CONCLUSION

Based on the foregoing, the undersigned recommends that petitioner's petition for a writ of habeas corpus be granted.

These amended findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 20 days after being served with these amended findings and recommendations, any party may file written objections with the court.  The document should be captioned "Objections to Magistrate Judge's Amended Findings and Recommendations."  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED:   January 26, 2007.

CRAIG M. KELLISON
UNITED STATES MAGISTRATE JUDGE